# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORESA S. FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-379-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Loresa Foster requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is herby REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 13, 1958, and was fifty-four years old at the time of the administrative hearing (Tr. 80). She has a high school education and certified nursing and medication assistant training, and has worked as a certified nursing aide, and a certified medication aide (Tr. 93-94, 209). The claimant alleges that she has been unable to work since November 10, 2010, due to systemic lupus, scleroderma, Raynaud's syndrome, Sjogren's syndrome, and depression (Tr. 153, 208).

## Procedural History

On March 7, 2011, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Richard J. Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 12, 2012 (Tr. 56-63). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 59). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a certified medication aide and certified nurse's aide, and because there was other work

that she could perform in the national economy, *e. g.*, arcade attendant, video clerk, and clerical mailer (Tr. 61-62).

**Review**

The claimant contends that the ALJ erred by failing to: (i) consider all the evidence in finding the claimant had no episodes of decompensation; (ii) consider and account for all of her mental impairments; (iii) properly determine the mental demands of her past relevant work; (iv) apply the Medical-Vocational Guidelines (the "Grids") to find her disabled; and (v) perform a proper credibility determination. The Court finds the claimant's last contention persuasive, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of limited scleroderma, Sjogren's syndrome, and Raynaud's syndrome, but that her alleged depression and anxiety were non-severe (Tr. 58-59). The medical record as to the claimant's mental impairments reveals that the claimant was admitted to St. John Hospital due to depression on June 30, 2004, and that she was receiving ongoing counseling for major depressive disorder as of July 12, 2004, but there are no specific treatment notes in the record related to this hospitalization (Tr. 250, 255, 260, 266, 271, 277, 283, 289). Providers at Sanford Family Medicine managed the claimant's depression and anxiety from April 2008 through March 2010 (Tr. 248-92).

Dr. William T. Bryant performed a psychological consultative examination on June 6, 2011 (Tr. 346-48). The claimant described her physical impairments, and stated that her depression was caused by her illness (Tr. 347). Dr. Bryant found that the

-4-

claimant's depressive symptoms were mild, and that her mental status was excellent except for abstracting and judgment (including use of inappropriate language), which he thought suggested that the stress from her illness was affecting some of her higher cognitive functions (Tr. 348).

State reviewing psychologist Michelle Butler, Psy.D., completed a Psychiatric Review Technique Form ("PRT") on June 9, 2011 (Tr. 349-62). Dr. Butler opined that the claimant was mildly limited in her ability to maintain concentration, persistence, or pace, but that she was not at all limited in her activities of daily living and ability to maintain social functioning, and had no episodes of decompensation (Tr. 359). Dr. Butler noted the claimant's June 2004 inpatient hospitalization, as well as Dr. Bryant's consultative exam, and indicated that the claimant wasn't currently receiving mental health treatment or taking any medications for her mental health (Tr. 361).

Barbara Osborne, a licensed professional counselor, assessed the claimant's mental status on August 11, 2011 (Tr. 426-35). The claimant reported suicidal thoughts that began two to three months earlier; severe sadness eight hours per day, seven days per week; and that she was only awake eight hours per day (Tr. 430). Ms. Osborne diagnosed the claimant with depressive disorder not otherwise specified, assigned a Global Assessment of Functioning ("GAF") score of forty-nine, and rated the claimant's severity level at moderate (Tr. 433). Ms. Osborne indicated the claimant's prognosis was fair based on adherence to treatment, and that she could benefit from medication management, group psychotherapy, psychiatric-social rehabilitation group, and case management (Tr. 435).

On August 17, 2011, the claimant presented to psychiatrist Dr. Vanessa Werlla, and reported a depressed mood and excessive sleep (Tr. 448). Dr. Werlla diagnosed the claimant with major depressive disorder secondary to chronic pain, lupus, and scleroderma, and prescribed an anti-depressant (Tr. 448). The claimant reported decreased depression at a follow-up appointment on September 12, 2011, and Dr. Werlla noted the claimant's symptoms were fairly improved (Tr. 449). She diagnosed the claimant with pain disorder related to psychological factors, and major depressive disorder (Tr. 449). At a follow-up appointment on October 11, 2011, the claimant reported decreased depression, but significant pain in her feet (Tr. 447). Dr. Werlla provided the claimant with the contact information for clinics that could help with her physical impairments (Tr. 447). The claimant did not show for her follow-up appointment on November 1, 2011, and there are no further treatment records from Dr. Werlla in the record (Tr. 446).

Evidence submitted to the Appeals Council reveals that the claimant presented to Dr. Cornelia Mertz on May 31, 2013, and reported a depressed mood, diminished interest/pleasure, somewhat difficult functioning, and fatigue (Tr. 25). She also reported that her depression was aggravated by conflict, stress, and social interactions (Tr. 25). Dr. Mertz prescribed an anti-depressant, and indicated she needed "to discuss in further detail at next visit." (Tr. 25-27). At a follow-up appointment on July 16, 2013, Dr. Christopher Thurman noted the claimant wanted to refrain from medication for depression at that time, but would re-evaluate at her next appointment (Tr. 21-24). There are no further treatment notes from Oklahoma State Physicians in the record.

In his written decision, the ALJ summarized some of the medical evidence, the claimant's hearing testimony and function report, and a Third Party Function Report submitted by her husband (Tr. 58-59). At step two, he discussed the claimant's impairments, explaining those he deemed severe and those he deemed non-severe (Tr. 44). The ALJ referred to Dr. Butler's opinion in determining the claimant's depression and anxiety were non-severe, and found she was mildly restricted in her activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace (Tr. 58-59). At step four, he found the claimant not credible due to: (i) her normal physical consultative exam, (ii) lack of medical treatment from August 2010 through October 2011, (iii) her failure to follow-up with a rheumatologist beyond December 2009, (iv) absence of lupus diagnosis in the record, (v) absence of regular treatment for irritable bowel syndrome after diagnosis, (vi) an inconsistency between her testimony related to her hands and the medical record, and (vii) her activities of daily living (Tr. 59-60). He then found the claimant not disabled at step five (Tr. 61-63).

The claimant contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e.g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, which eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing

court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.